UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHANNA PEROZO-CARRASQUERO | ) | Case No.: 3:26 CV 2029 |
| | ) | |
| Petitioner | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT LYNCH *et al.*, | ) | |
| | ) | |
| Respondents | ) | ORDER |

Currently pending before the court in the above-captioned case is Petitioner Johanna Perozo-Carrasquero's ("Perozo-Carrasquero") Petition for Writ of Habeas Corpus (ECF No. 1) and Respondents Robert Lynch, Secretary Markwayne Mullin, and Attorney General Todd Blanche's ("Respondents") Request to Dismiss (ECF No. 5). For the following reasons, the court grants the Petition and denies the Request to Dismiss.

## I. BACKGROUND

### A. Factual Background

Perozo-Carrasquero is a 42-year-old native of Venezuela and resident of Ohio. (Pet. Writ Habeas Corpus at PageID 5–6, ECF No. 1.) She fled Venezuela after facing persecution for her political opinions. (*Id.* at PageID 6.) Seeking refuge and asylum, she entered the United States on

May 17, 2024, by way of Brownsville, Texas, where she was inspected by DHS. (*Id.* at PageID 5–6.) While she was found not to be in possession of a valid entry document, she was nevertheless paroled into the country pursuant to 8 U.S.C. § 1182(d)(5)(A), for at least until April 24, 2026. (*See id.* at PageID 5–6; Gov. Ex. B: Notice to Appear at PageID 90, 93, ECF No. 5-2.) For over a year, Perozo-Carrasquero resided without complication in the United States. Her then-employer described her as "a dependable and punctual employee." (Pet. Ex. I: Employment Certificate at PageID 60, ECF No. 1-11.) She formed substantial community ties. (Pet. Ex. J: Letters of Support at PageID 62–66, ECF No. 1-12.) While she lacked citizenship status, she was for all intents and purposes a member of the Ohio community. Moreover, she was permitted — by Respondents' own determination — to reside freely in the United States. (Pet. at PageID 5–6, ECF No. 1.)

That changed on September 24, 2025. As planned, she appeared before an immigration judge for her Master Calendar Hearing. (Pet. at PageID 6, ECF No. 1.) The immigration judge set a date for an Individual Hearing to adjudicate the merits of her asylum claim. (*Id.*) But she could not go home. Immigration authorities immediately detained her. (*Id.*) For several months following, she was kept at Mahoning County Jail in Youngstown, Ohio. (*Id.*) All the while, proceedings continued.

On January 22, 2026, an immigration judge ordered Perozo-Carrasquero to be removed to Ecuador, finding applicable an Asylum Cooperative Agreement ("ACA") with the country that should ensure that, should she be deported there, she would have access to a full and fair procedure — albeit not in the United States — for determining a claim to asylum or other temporary protection. (*See id.* at PageID 7; Answer at PageID 78–79, ECF No. 5; 8 U.S.C. § 1158(a)(2)(A).) Perozo-Carrasquero timely filed an appeal with the Board of Immigration Appeals ("BIA") , challenging this order of removal. (Pet. at PageID 7, ECF No. 1.).

Separately, Perozo-Carrasquero has sought to be released from detention while awaiting any final determination of her appeal. Before receiving any bond hearing, on or around April 15, 2026, she was transferred to the Corrections Center of Northwest Ohio in Stryker, Ohio, further separated from her family and community. (*Id.*) Finally, on June 30, 2026, Perozo-Carrasquero appeared at a bond hearing, but the immigration judge declared that he lacked jurisdiction. (*Id.*) At the time of this ruling, she has been detained for over a year without a bond hearing. (*Id.* at PageID 8.) A licensed physician has determined that Perozo-Carrasquero has a medical condition that requires regular monitoring and blood testing, and that "[i]t would be significantly detrimental to her overall health and wellbeing if she were not able to get this ongoing medical care." (Pet. Ex. F: Physician's Medical Opinion Letter at PageID 52, ECF No. 1-8.)

**B. Procedural Background**

On August 24, 2026, Perozo-Carrasquero filed a Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241, requesting declaratory relief and immediate release or, in the alternative, an expedited individualized bond hearing. On September 8, 2026, Respondents filed their Answer, Return of Writ, and Request to Dismiss Petition for Writ of Habeas Corpus. (ECF No. 5.) On September 14, 2026, Perozo-Carrasquero filed her Reply in Support of Petition for Writ of Habeas Corpus. (ECF No. 6.)

## II. ANALYSIS

Respondents request that the court dismiss Perozo-Carrasquero's Petition for Writ of Habeas Corpus for either of two reasons: because she has failed to exhaust administrative remedies, or because her detention is mandatory given that she is subject to removal proceedings under § 1225(b)(2). The court considers each argument in turn, ultimately finding neither persuasive.

**A. Exhaustion of Administrative Remedies**

There is value in requiring a litigant to exhaust administrative remedies before filing suit. According to the Sixth Circuit, "[t]he exhaustion doctrine both allows agencies to 'apply [their] special expertise in interpreting relevant statutes' and promotes judicial efficiency." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (second alteration in original) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. 888 Corp.*, 813 F.2d 760, 764 (6th Cir. 1987)). Certain statutes explicitly require a court to dismiss an action initiated prior to the exhaustion of administrative remedies. *See id.* But in a proceeding where there is no such statutory obligation, "'sound judicial discretion governs' whether or not exhaustion should be required." *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)).

The Sixth Circuit has not yet "formally adopted a standard for determining when prudential exhaustion applies." *Botros Abdalla v. Raycraft*, No. 1:26-cv-2665, 2026 WL 2948737, at *2 (W.D. Mich. Oct. 1, 2026) (quoting *Lopez-Campos v. Raycraft*, 797 F. Supp. 771, 778 (E.D. Mich. 2025)). District courts within the Sixth Circuit have tended to apply three factors used in the Ninth Circuit to assess whether requiring exhaustion would be prudential. *Id.* (citing *United States v. Cal. Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983)). The factors favor requiring the exhaustion of administrative remedies where "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *California Care*, 709 F.2d at 1248). Alternatively, where "the 'legal question is "fit" for resolution and delay means hardship' . . . [or] the 'pursuit of administrative remedies would be a futile gesture,'" a court may waive any otherwise-prudential exhaustion requirements. *Id.* (first

quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000), then quoting *Shearson*, 725 F.3d at 594).

Here, the court finds that agency expertise is not necessary to reach a proper decision, because the legal question is already fit for resolution. Administrative review would not likely preclude Perozo-Carrasquero's perceived need for judicial review and would thus be little more than a futile gesture — as noted by Perozo-Carrasquero, the BIA has already expressly held that immigration judges do not have authority to grant bond to noncitizens "present in the United States without admission." (Pet. at PageID 9, ECF No. 1 (quoting *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 (B.I.A. 2025)).) Given that Perozo-Carrasquero maintains that her prolonged detention is unconstitutional, further delay in providing a final ruling on this issue would bring with it hardship. As such, the court finds it appropriate to hear this petition notwithstanding the fact that Perozo-Carrasquero has not exhausted all administrative remedies.

**B. Detention**

Respondents argue that, on the merits, Perozo-Carrasquero is not entitled to a bond hearing because her detention is statutorily mandated under § 1225(b)(2)(A) and because her detention comports with due process. The court disagrees on both counts.

*1. Detention Is Under § 1226(a)*

Perozo-Carrasquero contends that her detention is not statutorily mandated because she is currently subject to removal proceedings under § 1226(a), which provides that a noncitizen "may be arrested and detained pending a decision." 8 U.S.C. § 1226(a). Respondents assert that Perozo-Carrasquero is actually subject to removal proceedings under § 1225(b)(2)(A), which provides that a noncitizen "shall be detained for a proceeding under section 1229a of this title." 8 U.S.C.

§ 1225(b)(2)(A). This language, Respondents submit, establishes a mandatory detention requirement. The court agrees with Perozo-Carrasquero.

When Perozo-Carrasquero arrived for inspection at the border, she was found to be without valid entry documents. By the plain language of the statute, such a determination makes a noncitizen inadmissible. 8 U.S.C. § 1182(a)(7)(A)(i). However, a noncitizen may, at the discretion of the Secretary of the Department of Homeland Security, be "parole[d] into the United States temporarily under such conditions as he may prescribe . . . for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). The statute provides that "such parole . . . shall not be regarded as an admission" and that "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission." *Id.* Parties agree that Perozo-Carrasquero was permitted to enter the country by such parole. (*Compare* Pet. at PageID 5–6, ECF No. 1, *with* Answer at PageID 83, ECF No. 5.) The court gathers that when Perozo-Carrasquero was detained, her parole must have ended, rendering her subject to standard immigration proceedings under either § 1226(a) or § 1225.

Section 1226 establishes a general policy — what the Supreme Court has referred to as a "default rule" — that a noncitizen "may be arrested and detained pending a decision on whether [they are] to be removed from the United States." *Jennings v. Rodriguez*, 582 U.S. 281, 281 (2018); 8 U.S.C. § 1226(a). Section 1225, however, sets stricter detention requirements for any noncitizen who is "an applicant for admission." 8 U.S.C. § 1225(a)(1). The statute defines an applicant for admission as a noncitizen "who has not been admitted or who arrives in the United states." *Id.* An

applicant for admission may in turn be subject to § 1225(b)(1) or to § 1225(b)(2). Section 1225(b)(1) requires expedited removal of applicants who, like Perozo-Carrasquero, lack entry documents. 8 U.S.C. § 1225(b)(1)(a)(i). However, this provision applies only to a subset of applicants for admission: those who are "arriving in the United States" — or, at the discretion of the Attorney General, those "who ha[ve] not been admitted or paroled into the United States." 8 U.S.C. §§ 1225(b)(1)(A)(i), 1225(b)(1)(A)(iii). Section 1225(b)(2), meanwhile, extends to any "applicant for admission" who is "seeking admission." 8 U.S.C. § 1225(b)(2)(A). If "the examining immigration officer determines" that an applicant seeking admission is "not clearly and beyond a doubt entitled to be admitted," then the noncitizen "shall be detained for a proceeding under section 1229a of this title." *Id.*

To determine whether Perozo-Carrasquero is subject to § 1226(a) as she contends, the court must first assess whether she is an applicant for admission under § 1225(a)(1), and, if so, whether she is subject to either § 1225(b)(1) or § 1225(b)(2). The court finds that Perozo-Carrasquero is an applicant for admission but that neither § 1225(b)(1) nor § 1225(b)(2) apply to her. Perozo-Carrasquero is no doubt "an applicant for admission" because she is a noncitizen present in the United States who was never admitted. Yet she cannot be subject to § 1225(b)(1), even though she lacked entry documents, because she no longer "is arriving in the United States" — she has already arrived — and because she was paroled. Thus, she is subject to § 1225(b)(2)(A) or else to § 1226(a).

The court finds that both statutory language and interpretive gloss by the Sixth Circuit and the Supreme Court render § 1225(b)(2)(A) inapplicable to Perozo-Carrasquero, as § 1225(b)(2)(A) extends only to those seeking admission at the country's borders. First, the court looks to *Jennings v. Rodriguez*, 583 U.S. 281 (2018), where the Supreme Court distinguished between § 1225 as

regulating noncitizens "seeking admission into the country" and § 1226 as regulating noncitizens "already in the country." *Id.* at 289. The Court further observed that "[s]ection 1226 generally governs the process of arresting and detaining that group" of noncitizens who, "[e]ven once inside the United States, . . . may still be removed," including those "who were inadmissible at the time of entry." *Id.* at 288. And in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026), the Sixth Circuit recently resolved that § 1225 "applies to certain noncitizens who seek admission into the country," while § 1226 "applies to all other noncitizens." *Id.* at 722. These interpretations by higher courts indicate that there is a geospatial distinction between § 1225 and § 1226: those not yet in the country are regulated by § 1225, and those already in the country are regulated by § 1226.

Such a distinction aligns with principles expressed in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), as well as longstanding line-drawing between noncitizens who have and have not "passed through our gates." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see Thuraissigiam*, 591 U.S. at 107; *Lopez-Campos*, 175 F.4th at 733–34; *Martinez v. Larose*, 980 F.3d 551, 554–55 (6th Cir. 2020) (mem.) (Thapar, J., concurring in the denial of rehearing en banc); *see also Mullin v. Al Otro Lado*, 609 U.S. 258, 268 (2026) (identifying crossing of the border as the threshold for whether a noncitizen "arrives in the United States" (quoting 8 U.S.C. § 1225(a)(1))). Once a noncitizen has crossed the border, their rights expand. It is sensible that § 1225(b)(2)(A), with its more stringent detention requirement, apply only to those who have not passed through our gates.

The court acknowledges that § 1225(b)(2)(A) requires in relevant part only that the noncitizen be "seeking admission." Based on this language alone, it is arguable that Perozo-Carrasquero, by nature of applying for asylum, is still "seeking admission" to this country, as

asserted by Respondents. But *Jennings*[1] and *Lopez-Campos* articulate that the noncitizen must be "seek[ing] admission *into* the country." And, put simply, Perozo-Carrasquero is no longer seeking admission into the United States: she is already here.

This distinction comports with specific language in § 1225(b)(2)(A) as well as the section's title. Section 1225(b)(2)(A) mandates detention only "if the examining immigration officer" makes the requisite determination that a noncitizen is not entitled to be admitted. But as the Sixth Circuit noted in *Lopez-Campos*, "for noncitizens like Petitioners who are within the interior, . . . claims for relief are typically presented before and resolved by an immigration judge, who is expressly not an immigration officer." *Lopez-Campos*, 175 F.4th at 729 (citing 8 U.S.C. §§ 1101(b)(4), 1101(a)(18)). It concluded: "Section 1225(b)(2)(A) would not apply to noncitizens in this alternative scenario" who were within the interior and whose "desired immigration relief was a form of 'seeking admission.'" *Id.* Another district court has concluded in a comparable scenario that *Lopez-Campos* is binding on this question. *Beittar v. Warden of Campbell Cnty. Det. Ctr.*, 2026 WL 2873801, at *2 (E.D. Ky. Sep. 24, 2026) (concluding that a noncitizen paroled into and present in the United States for almost two years prior to being detained "could only have been detained pursuant to § 1226"). Finally, a statutory provision's title is at least somewhat indicative of its subject matter and purview, and, as raised by Perozo-Carrasquero, § 1225's title — "[i]nspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" — points to *arriving* noncitizens. 8 U.S.C. § 1225; *see Toscano-Perez v. Raycraft*, No. 2:26-cv-13007, 2026 WL

---

[1] While such language in *Jennings* was part of a plurality opinion, Justice Thomas and Justice Gorsuch concurred with the relevant portion of the opinion. *Jennings*, 583 U.S. at 314 (Thomas, J., concurring in Part I and Parts III–VI and concurring in the judgment) (joined by Gorsuch, J.).

2906031, at *7 (E.D. Mich. Sep. 28, 2026) ("The title of § 1225 is revealing:' . . . the word 'inspection' is 'difficult to reconcile with mass or abstract enforcement' in the interior of the country . . . ." (quoting *Velazquez v. Raycraft*, No. 25-cv-13675, 2026 WL 447417, at *4 (E.D. Mich. Feb. 17, 2026))).

Lastly, the court observes that several district courts in the Sixth Circuit have arrived at the same conclusion following *Lopez-Campos*. *See, e.g.*, *Martinez Pina v. Bullock*, No. 2:26-cv-02928, 2026 WL 2960929, at *2 (W.D. Tenn. Oct. 1, 2026) (finding *Lopez-Campos* analogous where noncitizen was paroled into country and had "lived for a 'significant time . . . within the interior of the United States'" (quoting *Lopez-Campos*, 175 F.4th at 734)); *Toscano-Perez*, 2026 WL 2906031, at *8 (concluding that "the most logical reading of § 1225(b) is that it governs different categories of noncitizens presenting themselves for *inspection*"); *Singh v. Warden*, No. 26-191, 2026 WL 1623145, at *1–2 (E.D. Ky. June 5, 2026) (finding *Lopez-Campos* applicable to noncitizen paroled into country who resided within the United States and applied for asylum). Other courts have come to this conclusion independent of *Lopez-Campos*. *See, e.g.*, *Ontiveros v. Warden Corr. Ctr. of Nw. Ohio*, No. 3:26-cv-632, 2026 WL 1109422, at *6 (N.D. Ohio Apr. 24, 2026) (concluding that, "[a]n immigrant is only 'arriving in the United States' . . . if they are in the act of reaching the United States"); *Isomoilov v. Maydak*, No. 26-185, 2026 WL 1587994, at *3 (E.D. Ky. June 3, 2026) ("'[S]ection 1182(d)(5)(A) does not, as Defendants insist, say that parolees return, upon the termination or expiration of their parole, to "the position of an applicant for admission standing at the threshold of entry."'" (quoting *Coal. for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 86 (D.D.C. 2025), *vacated*, 185 F.4th 1275 (D.C. Cir. 2026))); *Methelus v. Mullin*, No. 26-158, 2026 WL 1505792, at *5 (E.D. Ky. May 29, 2026) (finding that a noncitizen who was paroled into

the country and subsequently applied for asylum was detained subject to § 1226(a)). The court concludes that Perozo-Carrasquero could not have been detained subject to § 1225(b)(2). Accordingly, the court finds that she must have been detained subject to § 1226(a). To the extent that Respondents have detained Perozo-Carrasquero under § 1225(b)(2), such detention is unlawful.

*2. Due Process Requires Release or a Bond Hearing*

Perozo-Carrasquero is entitled to due process.[2] Here, due process requires that she be released or that she receive an individualized bond hearing. In *Lopez-Campos*, on which both Perozo-Carrasquero and Respondents rely, the Sixth Circuit affirmed that "the government's ability to detain noncitizens is not limitless." *Lopez-Campos*, 175 F.4th at 732. If detention is "needlessly prolonged and appears to no longer effectuate the regulatory goals of civil immigration detention, courts routinely hold that the Due Process Clause requires an individualized bond hearing." *Id.* at 732–33 (collecting cases). Courts that make such a holding apply the three-part balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The three *Mathews* factors to consider are the private interest affected, the risk of erroneous deprivation of that interest, and the federal interest affected. *Id.* at 335.

Here, the private interest is the liberty interest to be free from detention, which "is the most fundamental interest protected by the Due Process Clause and is shared by citizens and noncitizens alike." *Lopez-Campos*, 175 F.4th at 734 (citing *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001)); *see Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (describing this interest as "the most elemental

---

[2] Even if Perozo-Carrasquero were subject to mandatory detention, she would still be entitled to due process. *See, e.g.*, *Rodriguez v. Raycraft*, No. 4:26-cv-0302, 2026 WL 656956, at *8 (N.D. Ohio Mar. 9, 2026); *Zhalnin v. Dep't of Homeland Sec.*, No. 26-237, 2026 WL 2149717, at *1 (E.D. Ky. July 27, 2026); *Auguste v. Att'y Gen. of the U.S.*, No. 3:26CV0971, 2026 WL 1481381, at *2 (N.D. Ohio May 27, 2026).

of liberty interests"). The federal interest is fulfilment of the above-referenced "regulatory goals of civil immigration detention": to ensure appearance at future immigration proceedings and to prevent danger to the community. *Id.* at 732 (citing *Zadvydas*, 533 at 693). Such an interest is high. The final factor, risk of erroneous deprivation, has been interpreted in comparable cases as measuring the likelihood that a noncitizen would reliably appear at future proceedings and pose no danger to the community, thus making their detention unnecessary. *See, e.g.*, *Rodriguez*, 2026 WL 656956, at *9; *Ismoilov*, 2026 WL 15877994, at *4; *Singh*, 2026 WL 1623145, at *2. The court considers the risk of erroneous deprivation to be high in the absence of an individualized bond hearing. *See Methelus*, 1505792, at *6 (citing *Edahi v. Lewis*, No. 4:25-cv-129, 2025 WL 3466682, at *14 (W.D. Ky. Nov. 27, 2025)). Specifically regarding Perozo-Carrasquero, Respondents paroled her into the country, wherein she has developed substantial community ties. Moreover, Respondents have not made any statements suggesting that she would be a flight risk or pose any danger to the community. Accordingly, the court concludes that detention of Perozo-Carrasquero without bond is a deprivation of liberty that violates her due process rights.

## III. CONCLUSION

For the foregoing reasons, the court grants Perozo-Carrasquero's Petition for Habeas Corpus (ECF No. 1). Respondents are ordered to immediately release Perozo-Carrasquero, or in the alternative, provide her with a constitutionally adequate bond hearing where the government bears the burden of proof by clear and convincing evidence under § 1226(a) within seven (7) days of the date of this Order. In that time, Respondents may not transfer Perozo-Carrasquero from the district without the court's approval. Respondents shall file a status report with this court on or before October 15, 2026 to certify compliance with this Order. The status report shall include whether

Perozo-Carrasquero was immediately released, whether and when any bond hearing occurred, if bond was granted or denied, and, if denied, the reasons for that denial.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

October 7, 2026